IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ANNETTE MORALES,

    Plaintiff,

v.                                          2:15-cv-00662 MCA/LAM

RICKY HERRERA, in his individual and
official capacity as an Officer of the New
Mexico State Police; FELIPE GONZALEZ, in
his individual and official capacity as a
Sergeant of the New Mexico State Police;
and NORMAN RHOADES, in his individual and
official capacity, as an Officer of the New Mexico
State Police,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on (1) *Defendants' Motion for Partial Summary Judgment No. 1: Dismissal of Plaintiff's Unlawful Seizure Claim Based on Qualified Immunity* [Doc. 25], (2) *Defendants' Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's Claims for Relief Under the New Mexico Tort Claims Act and Supervisory Liability Under § 1983* [Doc. 26], and (3) *Defendants' Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted* [Doc. 27]. The Court has considered the parties' submissions and the relevant law, and is otherwise fully informed. For the following reasons, the Court **GRANTS** *Defendants' Motion for Partial Summary Judgment No. 1* [Doc. 25], **GRANTS** *Defendants' Motion for Partial*

*Summary Judgment No. II* [Doc. 26], and **DENIES** *Defendants' Partial Motion to Dismiss* [Doc. 27] as moot.

**I.    Background**

The Court provides a brief summary of the undisputed facts leading to Plaintiff's *Complaint*. Additional facts are provided in the discussion of Defendants' *Motions*. In January 2011, the City of Sunland Park (the City) issued a Request for Proposals (RFP) seeking bidders for a professional services contract to provide planning services to the City pertaining to a border crossing into Mexico. [Doc. 25, UMF ¶ 2; Doc. 25-1; Doc. 32, Response to UMF ¶ 1] Medius, Inc. (Medius) was the only company to respond to the RFP. [Doc. 25, UMF ¶ 7; Doc. 32, Response to UMF, ¶ 1] In March 2011, the City entered into a professional services contract (the Contract) with Medius. [Doc. 25, UMF ¶ 10; Doc. 25-1; Doc. 32, Response to UMF ¶ 1] Plaintiff Annette Morales is the founder of Medius, an S corporation. [Doc. 32, Addt'l UMF ¶ A; Doc. 38, pg. 3] The Contract was intended to result in a "strategic framework" that would "(1) determine the current physical infrastructure and housing capacity of the City; (2) develop a profile for the community and the region that surrounds the City. . . ; and (3) develop an infrastructure roadmap for the City that will guide growth to prepare them to seize future development opportunities." [Doc. 25-1] The Contract does not specify whether it is a fixed price, cost reimbursement, cost plus fixed fee, or other type of contract.[1] [Doc. 25-1] Instead, it provides that "[t]he City of Sunland Park shall pay to the Contractor in full payment for

---

[1] *Compare* NMSA 1978, § 13-1-47 *with* NMSA 1978, § 13-1-58 (defining fixed price and cost reimbursement contracts); *see generally* Steven W. Feldman, 1 Government Contract Awards: Negotiation and Sealed Bidding § 4:2 (discussing contract types).

services satisfactorily performed based upon deliverables, such compensation not to exceed one million dollars ($1,000,000)." [Doc. 25-1, ¶ 2.B] The Contract also requires "Contractor [to] submit a detailed statement accounting for all services performed and related expenses by tasks [sic] outlined in the 'Scope of Work.'" [Doc. 25-1, ¶ 2.C] In bidding on the project, Plaintiff based her cost estimate on direct costs, overhead, and "a 3.5 multiplier." [Doc. 32, Addt'l UMF ¶ J; Doc. 38, pg. 3]

Medius began work on the project in March 2011. [Doc. 32, Addt'l UMF ¶ K; Doc. 38, pg. 4] Between March 2011 and August 2011, Medius billed the City over $457,000, which the City paid. [Doc. 25, UMF ¶ 45; Doc. 32, Response to UMF ¶ 23] In September 2011, the City terminated the Contract. [Doc. 25-1, pg. 44-45; Doc. 25, UMF ¶ 15; Doc. 32, Response to UMF, ¶ 1]

In April 2012, Defendants Herrera and Rhoades began investigating Medius's performance of and billing on the Contract. [Doc. 25, UMF ¶¶ 18, 26; Doc. 32, Response to UMF ¶¶ 4, 10] In August 2012, Defendants arrested Plaintiff pursuant to a warrant for fraud and embezzlement in violation of NMSA 1978, § 30-16-6 (fraud) and NMSA 1978, § 30-16-8 (embezzlement). [Doc. 25, UMF ¶ 40; Doc. 32, Response to UMF ¶ 19] The arrest warrant was based on an affidavit prepared by Defendant Herrera. [Doc. 25, UMF ¶ 39; Doc. 32, Response to UMF ¶ 19] Charges against Plaintiff were later dismissed by the Third Judicial District Attorney. [Doc. 1, ¶ 59; Doc. 32, Addt'l UMF, ¶ SS; Doc. 38, pg. 6]

In July 2015, Plaintiff filed a *Complaint for Violation of Civil Rights* (*Complaint*) in this Court. [Doc. 1] In the three-count *Complaint*, she alleges that Defendants

unlawfully seized her in violation of the Fourth and Fourteenth Amendments to the United States Constitution (Count I); that Defendant Herrera "intentionally falsely arrested, assaulted, battered, and falsely imprisoned" her contrary to the New Mexico Tort Claims Act (Count II); and that Defendants Rhoades and Gonzalez were liable because they failed to adequately supervise Defendant Herrera and/or promulgated policies and practices that deprived Plaintiff of her rights (Count III). [Doc. 1, pg. 16-17] Count I rests on Plaintiff's assertion that Defendant Herrera did not have probable cause to believe that Plaintiff had committed or was committing a crime and that Defendants Rhoades and Gonzalez failed to prevent the illegal arrest. [Doc.1, pg. 15]

Defendants now move for summary judgment on Count I the basis of qualified immunity. [Doc. 25] They argue that they are entitled to qualified immunity from Plaintiff's unlawful seizure claim because they had probable cause to arrest her and/or because Plaintiff has failed to demonstrate that her rights were clearly established at the time of the arrest. [Doc. 25, pg. 2-3] In a separate motion, Defendants move to dismiss Count I for failure to state a claim. [Doc. 27] Finally, Defendants also move for summary judgment on Counts II and III.

## II. Discussion

### A. Summary Judgment Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this Rule, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. Generally, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab*., 992 F.2d 1033, 1036 (10th Cir. 1993) (citations omitted). The moving party need not negate the nonmovant's claim, but rather must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc*., 912 F.2d 1238, 1241 (10th Cir. 1990) (citation omitted). The nonmoving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment, *see Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988), but rather must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Upon a motion for summary judgment, a district court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co*., 985 F. Supp. 1277, 1281 (D. Kan. 1997).

**B.** *Defendants' Motion for Partial Summary Judgment No. 1 of Plaintiff's Unlawful Seizure Claim Based on Qualified Immunity* **[Doc. 25]**

The summary judgment analysis differs in the context of an assertion of qualified immunity. The doctrine of "qualified immunity shields government officials performing discretionary functions from suit and liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004). "In the context of a summary judgment motion, to prevail against a qualified immunity defense, the plaintiff must 'come forward with facts or allegations to show both that the defendant's alleged conduct violated the law and that the law was clearly established when the violation occurred.'" *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994) (quoting *Losavio*, 847 F.2d at 646). A plaintiff ordinarily demonstrates that a law is clearly established by showing a Supreme Court or Tenth Circuit decision on point, or that the clearly established weight of authority from other courts has determined the law to be as the plaintiff maintains. *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). Only if the plaintiff satisfies both elements does the defendant bear the normal burden of the summary judgment movant of "showing that no material factual issues remain to defeat his claim of qualified immunity." *Pallottino*, 31 F.3d at 1026 (quoting *Losavio*, 847 F.2d at 646). "Summary judgment on the basis of qualified immunity is inappropriate where there is a factual dispute involving an issue on which qualified immunity turns." *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1266 (D.N.M. 2009).

## 1. Plaintiff has not Shown a Violation of a Constitutional Right

In Count I, Plaintiff alleges that Defendants violated her rights under the Fourth Amendment[2] to the United States Constitution when they arrested her without probable cause. [Doc. 1] Because a warrant for her arrest was issued by a magistrate based on an affidavit by Defendant Herrera, Plaintiff focuses her arguments on the affidavit's adequacy. She contends that Defendant Herrera (1) misrepresented the information he obtained from her about meetings and deliverables [Doc. 32, pg. 21]; and (2) intentionally or recklessly omitted evidence tending to show that the complaining witnesses lacked credibility. [Doc. 32, pg. 23] She also argues that the allegations fail to establish probable cause as to embezzlement as a matter of law because the City did not entrust any funds to her. [Doc. 32, pg. 22-23]

Ordinarily, the fact that a magistrate authorized the warrant would indicate that the arrest was objectively reasonable. *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("A neutral magistrate judge's issuance of a warrant is the clearest indication that the officers acted in an objectively reasonable manner or in objective good faith." (internal quotation marks and citation omitted)). But where the affidavit for an arrest warrant "is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or where the affiant "misrepresent[s] or omit[s] material facts to the magistrate judge," the warrant offers no protection from liability. *Id*. at 1142 (internal quotation marks and citations omitted). Thus, Plaintiff's arguments require the Court to look beyond the magistrate's authorization to the affidavit itself. *Id*.

---

[2] Applicability of the Fourteenth Amendment is addressed in Section II.C.

In the affidavit, Defendant Herrera describes the investigation, the RFP, the Contract, and financial information he received about Medius's invoices and expenses. Doc. 25-1, pg. 9-24] The affidavit does not specify which conduct is alleged to be fraudulent and which conduct is alleged to be embezzlement. *Cf. State v. Hornbeck*, 2008-NMCA-039, ¶ 15, 143 N.M. 562, 178 P.3d 847 (stating that, although embezzlement and fraud convictions are mutually exclusive, "when the facts support either a conviction for fraud or embezzlement, charging in the alternative d[oes] not violate double jeopardy"). Defendant Herrera alleged in the affidavit that Plaintiff committed either fraud or embezzlement by billing the City for expenses not related to the Contract or billing the City for work not performed. [Doc. 25-1, pg. 14 (stating that Defendant Herrera "identified the amount between $262,028.73 to $271,775.42 as being outside the scope of the [C]ontract . . . and not supported by the deliverables identified by the invoices submitted by [Plaintiff].")] Defendant Herrera noted that Plaintiff had invoiced the City and was paid $457,777.80, but that Medius's expenses were $223,170.71. [Doc. 25-1, pg. 13] He also alleged that "[Plaintiff] has fraudulently used or embezzled hundreds of thousands of dollars that were provided from the City of Sunland Park to Medius for purposes related to their [C]ontract." [Doc. 25-1, pg. 13] As support for this assertion, Defendant Herrera went on to detail each of the five invoices submitted by Medius and paid by the City as well as transactions for each month that were allegedly "outside the scope of the [C]ontract." [Doc. 25-1, pg. 16]

The affidavit also includes two types of allegations related to Medius's performance of the Contract. First, it alleges that records and deliverables do not show

that Medius actually performed the work as represented in the five invoices. [Doc. 25-1, pg. 13, 15, 16]  Second, it alleges that the value of Medius's work was $87,000, not $457,777.80 as billed, based on statements by a complaining witness. [Doc. 25-1, pg. 9]

Under the Fourth Amendment, an arrest warrant must be supported by probable cause. *See Patel v. Hall*, 849 F.3d 970, 982 (10th Cir. 2017) ("The Fourth Amendment requires that an officer must have probable cause to initiate a search, arrest, and prosecution.").  The Fourth Amendment provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

When the probable cause requirement is met, an arrest is lawful and officers are immune from suit. *Patel*, 849 F.3d at 982 ("Officers are immune from any suit arising from an allegedly unlawful arrest if there was arguable probable cause to arrest the plaintiff." (internal quotation marks and citation omitted)).  "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant[, in] a man of reasonable caution[,] the belief that an offense has been or is being committed." *Rife v. Oklahoma Dep't of Pub. Safety*, 854 F.3d 637, 645 (10th Cir. 2017).  "The officer's belief does not need to be certain or more likely true than false." *Id.* at 644–45.  Finally, "probable cause does not require police officers to rule out all innocent explanations for a suspect's behavior." *Id.*  "In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law

by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher*, 759 F.3d at 1141 (internal quotation marks and citation omitted).

When a suspect is arrested for multiple charges, an officer is immune if there is probable cause to arrest for a single charge. This is so because "[a]n arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is *a* reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed." *Holmes v. Vill. of Hoffman Estates,* 511 F.3d 673, 682 (7th Cir. 2007)) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153–55 (2004)). Thus, since Plaintiff was arrested for fraud and embezzlement, the arrest was valid so long as arguable probable cause existed for either charge. [Doc. 26-1 (arrest warrant)]

"It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit" requesting a warrant. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (internal quotation marks and citation omitted). When the arrest warrant affidavit includes false statements, "the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit." *Id.* "Similarly, it is a Fourth Amendment violation to knowingly or recklessly omit from the affidavit information which, if included, would have vitiated probable cause." *Id.* (internal quotation marks and citation omitted). In that case, the Court "examin[es] the affidavit as if the omitted information had been included and inquir[es] if the affidavit

would still have given rise to [arguable] probable cause for the warrant." *Id.* (internal quotation marks and citation omitted).

To reiterate, Plaintiff argues that the affidavit is faulty because Defendant Herrera (1) misrepresented the information he gained from her about meetings and deliverables [Doc. 32, pg. 21]; and (2) intentionally or recklessly omitted evidence tending to show that the complaining witnesses lacked credibility. [Doc. 32, pg. 23] In keeping with the principles set out in *Taylor*, the Court will examine the affidavit without considering the allegations as to deliverables and without considering the statements of the complaining witnesses. [*See*, e.g., Doc. 25-1, ¶¶ 4, 5, 18, 28, 29, 30] The Court finds that the remaining allegations established arguable probable cause to believe that Plaintiff billed the City for amounts not authorized by the Contract, i.e., fraud. "Fraud consists of the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations." NMSA 1978, § 30-16-6(A) (2006).

There is no dispute that, during his investigation in April 2012, Plaintiff gave Defendant Herrera a "17-page spreadsheet that outlined all expenditures for Medius" which included a summary entitled "Strategic Framework Expense Summary with 3.5 Multiplier." [Doc. 25, UMF ¶ 19; Herrera Affidavit, Doc. 25-1, pg. 2, ¶ 7; Doc. 32, Response to UMF ¶ 4; Morales Affidavit, Doc. 32-1, pg. 10, ¶ 34; Doc. 32, Addt'l UMF, ¶ GG; Doc. 38, pg. 5] The spreadsheet showed total project expenses of $203,620.49[3].

---

[3] In the affidavit, Defendant Herrera asserted that Medius's expenses were $223,170.71. The discrepancy between this amount and the amount shown in Plaintiff's spreadsheet is

[Doc. 32-1, ¶ 34; Doc. 32-7; Doc. 25-1, pg. 12] There is also no dispute that Medius billed for and was paid over $450,000. [Doc. 25, UMF ¶ 45; Doc. 32, Response to UMF ¶ 23] These facts are asserted in the affidavit. [Doc. 25-1, pg. 13]

As discussed above, neither the RFP nor the Contract specified the contract type. [Doc. 25-1, pg. 29; Doc. 25-1, pg. 32] There is no mention of a fee, profit, markup, or multiplier in the section of the Contract addressing compensation or elsewhere. [Doc. 25-1, pg. 33] The Contract required Medius to provide "a detailed statement accounting for all services performed and *related expenses by tasks* [sic] outlined in the 'Scope of Work,'" maintain "detailed time and expenditure records that indicate the date, time, nature and cost of services rendered during the [Contract's] term," and permit the City to audit Medius's records. [Doc. 25-1, ¶ 2.C (Emphasis added.); ¶ 18] Based on these terms, it was reasonable for Defendant Herrera to construe the Contract as a cost reimbursement-type contract. *See* Feldman, *supra* ("Cost reimbursement contracts provide for payment of the awardee's allowable incurred costs, to the extent prescribed in the contract.").

Plaintiff argues that she was entitled to add a "3.5 multiplier" and that she included such a multiplier in her price when she bid on the project. [Doc. 32, Addt'l UMF, ¶ J] Although Plaintiff maintains that use of such a multiplier is "recognized within the industry," [Doc. 32, Addt'l UMF ¶ J; Doc. 32-1, ¶ 11] the question is not whether use of a multiplier is a common practice but rather whether it was apparent from

---

immaterial here. The relevant issue for purposes of a probable cause analysis is the difference between the amount of expenditures and the amount billed.

the Contract or other information provided to Defendant Herrera during the investigation that a multiplier was authorized *under the Contract terms*. While the proposed budget[4] that Plaintiff submitted in response to the RFP included a breakdown of direct labor costs, subcontractors, administrative overhead, and gross receipts taxes, it did not show the "3.5 multiplier" or indicate that a multiplier/fee was included in each line item. [Doc. 32-1, ¶ 11; Doc. 32, Addt'l UMF ¶ F; Doc. 38, Response to Addt'l UMF, pg. 3] In sum, it was not apparent from the Contract terms, the proposed budget, or the RFP that Plaintiff was entitled to bill the City for the "3.5 multiplier" in addition to the actual costs incurred in performance of the Contract.

In this context, the discrepancy between the expenditures reported by Plaintiff and the billed amount would lead a reasonable officer to believe that there was probable cause to arrest Plaintiff for fraudulently billing the City. *Stonecipher*, 759 F.3d at 1142 (stating that "when there is no dispute over the material facts, a court may determine as a matter of law whether a reasonable officer would have found probable cause under the circumstances"); *Lassiter v. Carver*, No. 16-CV-1008 SMV/CG, 2017 WL 3208531, at *3 (D.N.M. May 1, 2017) (stating that "[a]rguable probable cause is another way of saying that the officer's conclusions rest on an objectively reasonable, even if mistaken,

---

[4] Although it is unclear from the parties' statement of facts whether Defendant Herrera relied on the proposed budget in preparing his affidavit, the parties agree that Plaintiff submitted the budget to the City in response to the RFP. [Doc. 32, Addt'l UMF ¶ F; Doc. 38, pg. 3] Plaintiff also asserts that she "provided [Defendant Herrera] with access to all of my file information that included all financial information and all documentation about the work . . . performed." [Doc. 32, Addt'l UMF, ¶ GG] Construing the facts in Plaintiff's favor, as it must, the Court infers that Plaintiff provided the budget to Defendant Herrera. *Kaus*, 985 F. Supp. at 1281.

belief that probable cause exists" (citing *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007))).

Having found that there was arguable probable cause to arrest Plaintiff for fraud, it is unnecessary to examine whether there was probable cause to arrest Plaintiff for embezzlement. *Devenpeck*, 543 U.S. at 153 (stating that an arrest is lawful where "the circumstances, viewed objectively, justify that action" regardless of the officer's subjective motivation). The Court concludes that there was no violation of Plaintiff's constitutional rights. Therefore, the qualified immunity analysis is complete. *See A.M. v. Holmes,* 830 F.3d 1123, 1134–35 (10th Cir. 2016), *cert. denied sub nom. A.M. ex rel. F.M. v. Acosta*, 137 S. Ct. 2151 (2017) (stating that "if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense"); *Patel*, 849 F.3d at 982 ("Officers are immune from any suit arising from an allegedly unlawful arrest if there was 'arguable probable cause' to arrest the plaintiff."). Defendants' *Motion for Partial Summary Judgment No. 1* [Doc. 25] will be granted and Count I will be dismissed.

**C. Defendants'** *Partial Motion to Dismiss* **[Count I] [Doc. 27]**

Citing Rule 12(b)(6), Defendants also move to dismiss Count I to the extent it is based on violation of the Fourteenth Amendment to the United States Constitution. [Doc. 27] *See* Fed. R. Civ. P. 12(b)(6) (stating that "a party may assert the . . . defense[ of] . . . failure to state a claim upon which relief can be granted"). Defendants argue that only the Fourth Amendment, not the Fourteenth Amendment, applies to unlawful seizure claims. [Doc. 27] Thus, even if Plaintiff's factual allegations are taken as true, Plaintiff

cannot state a claim based on the Fourteenth Amendment. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (stating that "to withstand a [Rule 12(b)(6)] motion to dismiss, a complaint must have enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face" (internal quotation marks and citation omitted)). Plaintiff did not respond to the *Motion to Dismiss*. Under Local Rule 7.1(b), "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." In addition, although the Fourteenth Amendment rendered the Fourth Amendment applicable to state law enforcement officials through the due process clause, Plaintiff does not explain in the *Complaint* how the Fourteenth Amendment provides an independent cause of action for unlawful seizure. *Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."); *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1225 n.1 (10th Cir. 2008) (Fourteenth Amendment applies the Fourth Amendment to state actors).

The Court agrees with Defendants that, to the extent Plaintiff asserts an independent claim under the Fourteenth Amendment, that claim must be dismissed. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) ("A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim."). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing

these claims." *Albright*, 510 U.S. at 273 (internal quotation marks and citation omitted); *J.H. ex rel. J.P. v. Nation*, 61 F. Supp. 3d 1176, 1206 (D.N.M.) ("[W]here the Fourth Amendment directly addresses the alleged unconstitutional conduct, a plaintiff cannot also bring a substantive due-process claim for that conduct." (citing *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998)), *aff'd sub nom. J.H. ex rel. J.P. v. Bernalillo Cnty.*, 806 F.3d 1255 (10th Cir. 2015)). Moreover, "the Tenth Circuit has held that the Fourth Amendment applies to an officer's treatment of an arrestee from the formal arrest until the probable-cause hearing." *J.H. ex rel. J.P.*, 61 F. Supp. 3d at 1206. Thus, where, as here, the Fourth Amendment provides specific protection against unlawful arrests, Plaintiff's claim must be analyzed under that Amendment, not the "more generalized" Fourteenth Amendment due process clause. *Youbyoung Park v. Gaitan*, No. CV 11-987 KG/RHS, 2014 WL 12692146, at *5 (D.N.M. Mar. 31, 2014) (dismissing the plaintiff's § 1983 unlawful seizure claim based on the Fourteenth Amendment and stating that only the Fourth Amendment applied).

In any case, however, grant of *Defendants' Motion for Partial Summary Judgment No. I* and dismissal of Count I render *Defendants' Partial Motion to Dismiss* moot. The Court will therefore deny the *Motion to Dismiss* as moot.

**D. *Defendants' Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's Claims for Relief Under the New Mexico Tort Claims Act and Supervisory Liability Under § 1983* [Doc. 26]**

Defendants also move for summary judgment as to Counts II and III of the *Complaint*. In Count II, Plaintiff alleges that Defendant Herrera "intentionally falsely arrested, assaulted, battered, and falsely imprisoned" Plaintiff in violation of the New

Mexico Tort Claims Act. [Doc. 1, pg. 16] NMSA 1978, §§ 41-4-1 to -27 (1976). In Count III, Plaintiff alleges that Defendants Gonzalez and Rhoades "(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." [Doc. 1, pg. 17] She also alleges that "[t]he New Mexico State Police have developed a custom, practice, or policy that intentionally or recklessly disregards the need for proper training regarding white-collar crimes such as fraud or embezzlement" and that the lack of training "was a primary factor behind the unlawful seizure" of Plaintiff. [Doc. 1, pg. 17] Because each of these claims rests on the unconstitutional arrest of Plaintiff, and the Court has determined that the undisputed facts establish that there was no such violation, summary judgment is appropriate and these claims must be dismissed.

As Plaintiff acknowledges [Doc. 33, pg. 2], "[a]n officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 173 P.3d 6; *Clema v. Colombe*, 676 F. App'x 801, 805 (10th Cir. 2017) ("An arrest supported by probable cause cannot be the basis for a claim of false imprisonment."). Hence, since the undisputed facts demonstrate that probable cause supported Plaintiff's arrest, Plaintiff's false arrest and false imprisonment claims must also be dismissed. *Santillo*, 2007-NMCA-159, ¶ 14 (affirming summary judgment on false imprisonment and false arrest

claims where "there [we]re no genuine issues of material fact indicating that [the defendant] did not have probable cause to [arrest the plaintiff]").

Similarly, Plaintiff's assault and battery claims must also be dismissed. A certain amount of force is inherent in an arrest. *See State v. Ellis*, 2008-NMSC-032, ¶ 15, 144 N.M. 253, 186 P.3d 245 (stating that "police officers have a duty to make arrests and a right to use reasonable force when necessary"). Plaintiff does not make any allegations in the *Complaint* that Defendants used excessive force during her arrest. [Doc. 1] The Court therefore understands her assertion that Defendant Herrera "assaulted [and] battered" her as an assertion that he lacked lawful reason to apprehend her. *See* NMSA 1978, 30-3-1 (stating that assault is "an attempt to commit a battery upon the person of another; [or] any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery"); NMSA 1978, § 30-3-4 (1953) (stating that "[b]attery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner"). The existence of probable cause renders the arrest lawful and, therefore, Plaintiff's assault and battery claims cannot lie. *See Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 21, 148 N.M. 831, 242 P.3d 398 (dismissing assault and battery claims based on unlawful arrest where probable cause supported the arrest).

Finally, state claims of supervisory liability and failure to train require proof of a constitutional violation, e.g., an unlawful seizure. *See McDermitt v. Corr. Corp. of Am.*, 1991-NMCA-034, ¶ 1, 112 N.M. 247, 814 P.2d 115 (stating that "immunity is not waived for negligent training and supervision standing alone; such negligence must cause a

specified tort or violation of rights"). Because the undisputed facts establish probable cause for arrest, there was no unlawful seizure and these claims also must be dismissed. *Id*. ¶ 6 (stating that the "plaintiff cannot recover for negligent training or supervision in the absence of either a tort listed in Section 41–4–12 or a deprivation of a right secured by the federal or state constitution or laws").

In sum, since the Court has found, based on the undisputed facts, that probable cause supported her arrest, Plaintiff cannot establish the constitutional violation necessary for Counts II and III. The Court will therefore grant Defendants' *Motion for Summary Judgment No. II* [Doc. 26] and Counts II and III will be dismissed.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' *Motion for Partial Summary Judgment No. 1: Dismissal of Plaintiff's Unlawful Seizure Claim Based on Qualified Immunity* [Doc. 25]. Count I of the *Complaint* is therefore dismissed.

The dismissal of Count I renders moot *Defendants' Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted* [Doc. 27]. Therefore, the Court **DENIES** *Defendants' Partial Motion to Dismiss for Failure to State a Claim Upon Which Relief can be Granted* [Doc. 27] as moot.

Finally, the Court also **GRANTS** *Defendants' Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's Claims for Relief Under the New Mexico Tort*

*Claims Act and Supervisory Liability Under § 1983* [Doc. 26]. Counts II and III of the *Complaint* are therefore dismissed.

    **SO ORDERED this 25th day of September 2017.**

                                                    **M. CHRISTINA ARMIJO**
                                                    **Chief United States District Judge**